**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**ROBERT L.,**

                                        **Plaintiff,**

          **vs.**                                                    **8:19-CV-415**
                                                                     **(MAD)**

**ANDREW M. SAUL,** *Commissioner of Social*
*Security Administration*,

                                        **Defendant.**

_____

**APPEARANCES:**                              **OF COUNSEL:**

**SCHNEIDER & PALCSIK**                        **MARK A. SCHNEIDER, ESQ.**
57 Court Street
Plattsburgh, New York 12901
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**            **KEVIN M. PARRINGTON, ESQ.**
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, Massachusetts 02203
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff applied for Supplemental Security Income ("SSI") under Title XVI of the Social

Security Act on May 17, 2016, alleging disability beginning on January 1, 2015. *See*

Administrative Transcript ("Tr.") at 11. Plaintiff's claim was initially denied and he requested a

hearing before an administrative law judge ("ALJ"). *See id.* On March 5, 2018, a hearing was

held before ALJ Asad Ba-Yunus, who denied Plaintiff's application on April 23, 2018. *See id.*

Plaintiff filed a timely request for review by the Appeals Council which, on March 25, 2019,

denied Plaintiff's request.  *See id.* at 1.  Plaintiff's filed his complaint in this Court on April 6, 2019.  *See* Dkt. No. 1.

Currently before the Court are the parties' cross-motions for judgment on the pleadings. *See* Dkt. Nos. 11 & 15.

## II. BACKGROUND

A.     **Plaintiff's Age, Education, and Work History**

Plaintiff was forty-seven years old when the ALJ issued his April 2018 decision denying Plaintiff's SSI application.  *See* Tr. at 23, 200.  Plaintiff has some college education and previously worked as a survival guide and mason, *see id.* at 226, 250-57, 596, which the vocational expert classified as a construction worker.  *See id.* at 86.  Plaintiff alleges that he became disabled in January 2015, but he did not apply for SSI until May 2016.[1]  *See id.* at 122, 200.

B.     **Medical Evidence Before the Relevant Period**

A consultative psychologist, Richard F. Liotta, Ph.D., examined Plaintiff in January 2016. *See* Tr. at 411.  Dr. Liotta observed that plaintiff was "somewhat unkempt" but had fair fundamental hygiene, euthymic to "somewhat depressed" mood, reasonably broad affect, reasonably clear and coherent speech, "close to average" abstracting ability, apparently fair insight, and apparently "fair to good" judgment.  *See id.* at 417.  Dr. Liotta opined that Plaintiff's depression and anxiety interfere with functioning outside his usual environment; that Plaintiff will likely have "some difficultly at this point" dealing with public and authority figures; that Plaintiff appears to have "some longstanding attention and concentration issues with distractibility,

---

[1] Plaintiff therefore must establish disability in or after May 2016.  *See* 20 C.F.R. §§ 416.202(g), 416.305(a), 416.330, 416.335.

forgetfulness, and trouble focusing on a sustained basis"; and that Plaintiff had limited ability to adapt to stressful circumstances. *See id.*

An MRI of Plaintiff's lumbar spine in February 2016 showed a "compression deformity" that was "unchanged from ... previous films," mild to moderate disc space narrowing at several levels, mild facet joint degeneration, several disc bulges and herniations with "minimal" or "mild" mass effect on the ventral thecal sac, moderate neural foraminal narrowing, and a disc herniation that contacted a nerve root. *See id.* at 421.

In March 2016, Plaintiff sought treatment from Behavioral Health Services North ("BHSN"). Plaintiff reported that he had continued "mak[ing] artwork from his culture to sell." *Id.* at 644. Specifically, Plaintiff stated that he makes "primitive art (arrowheads, painting of Adirondacks, photographs) which he sells on a website." *Id.* at 646. In April 2016, Plaintiff reported that he was "doing well," "keeping busy with his archeology," "continu[ing] to look for artifacts," and "making cultural arrows/bows from his Native American Heritage." *Id.* at 441. Plaintiff also reported that he continued to do yoga to relieve his arthritic pain. *See id.* Later that month, Plaintiff reported that he had continued "document[ing] his findings in nature." *Id.* at 640.

## C.     Medical Evidence During the Relevant Period

A psychiatrist with BHSN, Stanley Poreba, M.D., met with Plaintiff in May 2016. *See* Tr. at 431-32. Dr. Poreba observed that Plaintiff was casually dressed and had fair grooming, good eye contact, spontaneous and luminous speech, constricted affect, dysphoric to hypomanic mood, and circumstantial and tangential thinking. *See id.* at 432. Plaintiff reported that he saw his family, goes to several Alcoholics Anonymous meetings every week in various locations, and was

"exhausted" from "help[ing] out his fried with landscaping, mowing, and moving items." *Id.* at 437.

A consultative psychologist, Carly Mount, Ph.D., examined Plaintiff in June 2016. *See id.* at 452. Dr. Mount observed that Plaintiff was unkept and poorly groomed. *See id.* at 454. She also observed that he had normal posture, normal motor behavior, hesitant eye contact, fluent, clear, and sometimes rapid speech, adequate expressive and receptive language, current and goal directed thought processes (though sometimes irrelevant and tangential), anxious and dysthymic mood, dysphoric and anxious affect, clear sensorium, mildly impaired attention and concentration, intact recent and remote memory, average to below average cognitive functioning, "appropriate to experience" general fund of information, and fair to poor insight and judgment. *See id.* at 454-55. Dr. Mount opined that Plaintiff could follow and understand simple directions and instructions and perform simple tasks independently. *See id.* at 456. She also opined that he had mild to moderate limitations in maintaining attention, concentration, and a regular schedule, learning new tasks, performing complex tasks independently, making appropriate decisions, relating adequately with others, and appropriately dealing with stress. *See id.*

Plaintiff was examined by a consultative physician, Nader Wassef, M.D., in June of 2016. *See* Tr. at 460. Plaintiff reported cooking twenty-one (21) times per week, cleaning every day, clearing every day, shopping and doing laundry twice a week, and doing childcare on weekends. *See id.* at 462. Dr. Wassef observed that Plaintiff had normal gait and could walk on his heels and toes without difficulty, rise from a chair without difficulty, and get on and off the exam table without help. *See id.* Dr. Wassef further observed that Plaintiff had full range of motion in his arms, legs, and cervical and lumbar spine, negative straight-leg-raising tests, and "stable and

nontender" joints. *See id.* at 463. Finally, Dr. Wassef noted that Plaintiff had "moderate limitations" in standing, walking, sitting, bending, squatting, operating foot controls, lifting, pushing, pulling, handling, and climbing and descending stairs. *See id.* at 464.

Also in June 2016, Plaintiff sought treatment from Beach Medical Services. *See* Tr. at 467. Plaintiff reported that he had recently fallen sixty (60) feet down a hill. *See id.* X-rays of Plaintiff's right shoulder showed no significant bony (osseous) abnormality. *See id.* at 475. X-rays of Plaintiff's cervical spine showed mild, "moderate to severe," or severe neural foraminal narrowing at several spinal levels. *See id.* at 477.

During an appointment with BHSN in July 2016, Plaintiff reported that he had fallen out of a tree while playing with his son. *See id.* at 633. Plaintiff also reported that he had been drinking heavily "due to pain and other people who are being obnoxious." *Id.* Plaintiff reported that interacting with other people makes him anxious and that he tends to be antisocial. *See id.*

Plaintiff returned to Beach Medical Services in July 2016. *See id.* at 758. Jaclyn R. Combes, RPA-C, observed that Plaintiff had pain in his right shoulder but also full range of motion and no weakness. *See id.* at 759. Ms. Combes also observed that Plaintiff had intact motor strength and sensation in his arms and good range of motion in the cervical spine. *See id.* An MRI of the cervical spine showed "mild," "moderate," and "moderately severe" neural foraminal stenosis. *See id.* at 749-50. An MRI of Plaintiff's right shoulder showed "moderately severe" joint arthrosis, "mild" impingement, and "mild" tendinosis. *See id.* at 756. A bone density study in August 2016 showed "early" osteopenia in the hips and osteopenia in the lumbar spine. *See id.* at 739.

In September 2016, Plaintiff underwent several x-rays, which showed a mild compression fracture and mild degenerative disc disease in the lumbar spine. *See* Tr. at 721. The x-rays further showed mild degenerative disc disease in the cervical spine, and no abnormalities in the thoracic spine. *See id.* at 731-32.

Later that month, Plaintiff returned to Beach Medical Services and reported "essentially body-wide pain." *Id.* at 708. Ms. Combes observed that Plaintiff had normal gait and referred him for a neurosurgical consultation. *See id.* at 709. Thereafter, Plaintiff returned to BHSN and reported to Courtney Beriau, LMSC, that he had started to drink again, but did not have cravings. *See id.* at 629. Plaintiff further reported that he had hiked six miles the prior day. *See id.*

In November 2016, Plaintiff returned to BHSN and informed Dr. Poreba that Neurontin was "particularly helpful." *Id.* at 607. Later that months, Plaintiff told Ms. Beriau that his mood had been improving and Neurontin had helped his pain and sleep. *See id.* at 627. Plaintiff also reported that he "continues to do arts and crafts, as well as research nature." *Id.*

In December 2016, Plaintiff returned to Beach Medical Services. Plaintiff reported that Neurontin had "really helped with his pain" but made him irritable and shaky, giving him night sweats, nightmares, and mood swings. *See id.* at 693. Overall, Plaintiff reported feeling "much better" off it. *See id.* Plaintiff stated that he cancelled his neurosurgery appointment because he did not "feel quite ready for surgery." *Id.* Ashley Williams, P.A., observed that Plaintiff's bipolar disorder was "well-controlled." *Id.* at 694.

At BHSN in February 2017, Plaintiff reported that he continued "look[ing] forward to being outside and work[ing] in the historical societies for the environment." *Id.* at 620. The next month, Plaintiff returned to Beach Medical Services. *See id.* at 681. Plaintiff reported sinus pain

and pressure. *See id.* Plaintiff indicated that he had no arthritis, back pain, joint swelling, joint stiffness, weakness, or anxiety. *See id.* at 682. M. Bazdario-Russell, FNP-C, observed that Plaintiff's arms and legs had full strength, full range of motion, full sensation, and full stability. *See id.* at 683. During another appointment in April 2017, Mara Russell, FNP, observed that Plaintiff had intact range of motion, no tenderness, no weakness, normal gait, and no deformities. *See id.* at 754.

Over the next few months, Plaintiff returned to BHSN several times. In April 2017, Plaintiff had an appointment with Dr. Poreba where it was observed that Plaintiff was casually dressed and disheveled. *See* Tr. at 606. Plaintiff indicated that he cancelled his neurology appointment, and instead went to see his rheumatologist, because he was considering trying Enbrel for his psoriasis. *See id.* Dr. Poreba noted that this was "quite a departure from [the] natural/herbal approach" that Plaintiff had previously indicated he intended to pursue. *See id.* Plaintiff also informed Dr. Poreba that he had discovered a "400[ ] year-old white pine tree grove that he and [the] forest service will soon publish." *Id.* In June 2017, Plaintiff told Ms. Beriau that he would be in court for "breaking a window on his ex's car," which he attributed to his "ex's boyfriend violent behaviors" and his concern about his son. *See id.* at 618. In September 2017, Plaintiff again saw Dr. Poreba and told him about several psychosocial stressors. *See id.* at 605. The next month, Plaintiff told Dr. Poreba that he had been sober for almost a year. *See id.* at 604. Dr. Poreba observed that Plaintiff's mental status exam ("MSE") showed rapid and at times pressured speech. *See id.* In December 2017, Plaintiff informed Ms. Beriau that he continued "seek[ing] out nature discoveries and spending time in the woods to decrease his stress level." *Id.* at 611.

Also in December 2017, Plaintiff saw a new psychiatrist with BHSN, Dr. Nathaniel Kouns. *See id.* at 602. Plaintiff reported that he had been taking his girlfriend's Wellbutrin for hte past three weeks, which reduced his irritability, anger, and depression. *See id.* Dr. Kouns observed that Plaintiff was kind and cooperative. *See id.* Dr. Kouns also observed that Plaintiff had euthymic mood, congruent affect, loquacious and pressured speech, "somewhat tangential though redirectable" thought processes, poor attention, "2 out of 3" memory, intact executive function, good fund of knowledge, intact abstraction, good insight, and fair judgment. *See id.*

In January 2018, Ms. Beriau observed that Wellbutrin had "assisted" Plaintiff's depressed mood. *See* Tr. at 609. Plaintiff stated that he had moved into a new apartment and enjoyed his new surroundings. *See id.* at 610.

Alana M. Nevares, M.D., a rheumatologist with University of Vermont Medical Center, saw Plaintiff in January 2018. *See id.* at 664. Plaintiff reported joint problems, finger and ankle swelling, and constant back pain. *See id.* Dr. Nevares observed that Plaintiff had full range of motion in the neck, shoulder (though with pain when fully raising his arms), elbows, wrists, lower back, hips, knees, and ankles. *See id.* at 666. Dr. Nevares also observed that Plaintiff's hands had some swelling, some "mild" fullness, and tenderness. *See id.* X-rays of Plaintiff's hands and feet showed "mild and "mild to moderate" degenerative disease in the feet, swelling and "minimal, at most, narrowing" of the finger joints of the left hand, and "[m]ild joint space narrowing" and "at least mild degenerative disease" in the right hand. *See id.* at 662-63.

In February of 2018, Dr. Nevares opined that Plaintiff, during an eight-hour day, could lift twenty pounds occasionally and less than ten pounds frequently, stand and walk for about four hours, and sit for less than two hours, frequently twist, climb stairs, and climb ladders, and

occasionally stoop and crouch. *See* Tr. at 797-98. Dr. Nevares also opined that Plaintiff would need to lie down for about two hours, shift at will between sitting and standing or walking, lie down at unpredictable intervals, and miss about three days of work per month. *See id.* at 797. Dr. Nevares also found that Plaintiff's impairments would affect his ability to reach, handle, finger, push, and pull. *See id.* at 798. Finally, Dr. Nevares opined that physical activity would be so painful that Plaintiff would abandon tasks, and that pain would distract Plaintiff from adequate performance. *See id.* at 799.

That same month, Dr. Kouns saw Plaintiff. *See id.* at 801. Plaintiff reported improved mood and well-being. *See id.* Plaintiff further reported that he had been "occupying himself with research on Green spaced in the local area." *Id.* Dr. Kouns observed that Plaintiff was kind and cooperative though loquacious. *See id.* Dr. Kouns also observed that Plaintiff had fair grooming, euthymic mood, congruent affect, somewhat circumstantial thought processes, baseline cognition, good insight, and fair judgment. *See id.*

Later that month, Dr. Kouns opined that Plaintiff had "mild" and "moderate" limitations in various areas of mental functioning, with "marked" limitations in completing a normal workday and workweek, performing at a consistent pace, accepting instructions and responding appropriately to criticism from supervisors, and getting along with coworkers or peers without distracting them or exhibiting behavioral extremes. *See id.* at 806-08. Dr. Kouns opined that Plaintiff could "work on a regular and sustained basis in light of his or her mental impairment," explaining that he was "more concerned about physical limitations exacerbating mood systems." *Id.* at 808.

### III. DISCUSSION

## A. Standard of Review

A person is disabled when he is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). There is a five-step analysis for evaluating disability claims:

> "In essence, if the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do."

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002)) (other citation omitted). "The claimant bears the burden of proof on the first four steps, while the Social Security Administration bears the burden on the last step." *Id.* (citation omitted).

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine *de novo* whether a plaintiff is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Court must examine the Administrative Transcript to ascertain whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982)) (other citations omitted). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984) (citation omitted).

## B. The ALJ's Decision

At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activities since May 17, 2016, the application date. *See* Tr. at 14. At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative arthritis, psoriatic arthritis, cervical and lumbar degenerative disc disease, affective disorder, diagnosed as both bipolar disorder and depression, anxiety disorder with panic, posttraumatic stress disorder ("PTSD"), attention-deficit/hyperactivity disorder ("ADHD"), and cannabis dependency. *See id.* At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). *See id.* The ALJ then found that Plaintiff

has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that he may only occasionally stoop, kneel, crouch, crawl, climb ramps or stairs, or climb ladders, ropes, or scaffolds; he may have only occasional exposure to hazards including unprotected heights and dangerous machinery; he is limited to unskilled, simple, routine tasks, and work that involves only occasional changes in his routine work setting and occasional interaction with supervisors, coworkers, and the general public.

*Id.* at 16. At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. *See id.* at 21. At the fifth and final step, the ALJ found that, based on the vocational expert's testimony, considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. *See id.* at 22. These jobs include routing clerk, mail clerk, and cleaner/housekeeper. *See id.*

## C.    Exclusion of Evidence

In his motion, Plaintiff claims that the ALJ improperly excluded the medical source statement from Dr. Kouns. *See* Dkt. No. 11 at 26. Specifically, Plaintiff claims that the ALJ erred in finding the medical source statement inadmissible because it was not submitted at least five business days prior to the hearing and that none of the relevant exceptions to the five-day rule applied. *See id.* at 27-29. The Commissioner, however, contends that substantial evidence supports the ALJ's determination that the "unusual, unexpected, or unavoidable circumstances" exception does not apply. *See* Dkt. No. 15 at 11.

Under applicable regulations Plaintiff was obligated "to ensure that the administrative law judge receives all of the evidence ... no later than 5 business days before the date of the scheduled hearing." 20 C.F.R. §§ 404.935(a) & 416.1435(a). "'The Five-Day Rule permits an ALJ to decline to consider evidence not submitted at least five business days before the claimant's administrative

hearing, unless certain exceptions apply.'" *Arthur L. v. Saul*, No. 5:18-cv-304, 2019 WL 4395421,

*4 (N.D.N.Y. June 6, 2019) (quoting *Midkiff v. Berryhill*, No. 2:18-cv-338, 2019 WL 1258845, *1

(S.D.W. Va. Mar. 19, 2019)) (other citations omitted).  Under the regulations those exceptions

apply when:

> (1) Our action misled you;
>
> (2) You had a physical, mental, educational, or linguistic limitation(s) that prevented you from informing us about or submitting the evidence earlier; or
>
> (3) Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from informing us about or submitting the evidence earlier.  Examples include, but are not limited to:
>
>> (i) You were seriously ill, and your illness prevented you from contacting us in person, in writing, or through a friend, relative, or other person;
>>
>> (ii) There was a death or serious illness in your immediate family;
>>
>> (iii) Important records were destroyed or damaged by fire or other accidental cause; or
>>
>> (iv) You actively and diligently sought evidence from a source and the evidence was not received or was received less than 5 business days prior to the hearing.

20 C.F.R. §§ 404.935(b) & 416.1435(b).

In the present matter, Plaintiff knew as early as January 10, 2018, that he must submit, or

at least inform the ALJ about, any written evidence at least five business days before the

administrative hearing on March 5, 2018.[2]  *See* Tr. at 166, 187.  It is undisputed that Plaintiff did

---

[2] The hearing was held on Monday, March 5, 2018.  Five business days before the hearing

(continued...)

not satisfy this requirement for Dr. Kouns' assessment. Rather, the facts establish the following:

(1) seven days before the hearing, Plaintiff's attorney faxed a "Mental residual functional capacity

assessment" to Dr. Kouns, *id.* at 804; (2) two business days before the hearing, Dr. Kouns

returned the assessment to Plaintiff's attorney, *id.* at 803; and (3) one business day before the

hearing, Plaintiff submitted the assessment to the SSA, *see id.*

In addressing the exhibits at issue, the ALJ ruled as follows:

> The undersigned Administrative Law Judge declines to admit this
> evidence because the requirements of 20 CFR 416.1435(b) are not
> met. Specifically, there is no indication from Dr. Kouns that the
> claimant discussed his imminent disability hearing or requested that
> a medical source statement be prepared on his behalf [at Plaintiff's
> February 20, 2018 appointment with Dr. Kouns]. The time stamps
> from the medical source statements contained in B18F and B19F
> show that these were not faxed by Mr. Schneider's office to the
> claimant's psychiatrist until February 22, 2018. Therefore, given no
> substantive evidence to the contrary, I must conclude that this
> medical source statement was not prepared as part of the treating
> source's usual course of business or contemporaneously with the his
> February 20, 2018 examination. The claimant's representative was
> also offered the opportunity to provide a post-hearing memorandum
> documenting the timeline of efforts made to procure this evidence,
> but he has failed to do so as of the date of this decision, more than
> one month since the hearing. While the claimant's attorney had
> argued that these records are "very determinative" regarding the
> claimant's application for disability, such prejudicial effect does not
> outweigh the requirements of the claimant to make a good faith
> effort to acquire evidence within the five-day period, or provide
> sufficient notice regarding late submission of evidence. Therefore, I
> decline to admit the documents[.]

Tr. at 11-12.

In his motion, Plaintiff contends that the assessment satisfies the exception in 20 C.F.R. §

404.935(b)(3), which requires that an "unusual, unexpected, or unavoidable circumstance beyond

---

²(...continued)
was Monday, February 26, 2018.

[the claimant's] control prevented [him or her] from informing [SSA] about or submitting the evidence earlier." This exception applies if a claimant "actively and diligently sought evidence from a source and the evidence was not received or was received less than 5 business days prior to the hearing." 20 C.F.R. § 404.935(b)(3)(iv). Under SSA policy, an ALJ will find this exception applies if a claimant "made a good faith effort to timely request, obtain, and submit evidence, but he or she did not receive the records at least five business days before the date of the scheduled hearing because of circumstances outside his or her control." *See* Hearings, Appeals, and Litigation Law Manual I-2-6-59(B)(1) ("HALEX").

As the Commissioner correctly contends, substantial evidence supports the ALJ's determination that this exception did not apply to Dr. Kouns' assessment. *See* Tr. at 11. Plaintiff saw Dr. Kouns as early as December 2017. *See id.* at 602. That month or early in January 2018, Plaintiff received notice that the hearing would occur on March 5, 2018. *See id.* at 164, 187. Plaintiff then waited until February 22, 2018, to ask Dr. Kouns to complete the assessment. *See id.* at 49, 811-16.[3] In other words, Plaintiff and his attorney (who has represented Plaintiff since August 2016) waited more than a month after receiving notice of the hearing, and only seven business days before the hearing itself, to ask Dr. Kouns for the assessment.

Another court in this District recently affirmed an ALJ's decision to exclude evidence in similar circumstances. In *Arthur L. v. Saul*, No. 5:18-cv-304, 2019 WL 4395421 (N.D.N.Y. June 6, 2019), the claimant was notified of the administrative hearing and waited for two-and-one-half

---

[3] At the administrative hearing, Plaintiff alleged that he gave the assessment to Dr. Kouns at an appointment on February 20, 2018. *See* Tr. at 49-50. As the ALJ noted, treatment notes from that appointment contain no indication that Plaintiff "discussed his imminent disability hearing or requested that a medical source statement be prepared on his behalf." *Id.* at 12, 801-02.

months before seeking additional evidence. *See id.* at *4. The court agreed with the ALJ that the claimant had not "actively and diligently" sought the additional evidence. *Id.* The court also found that the eight business days was a "not surprising" turnaround time for a physician to complete an assessment. *See id.*; *see also Winfield v. Comm'r of Soc. Sec. Admin.*, No. 1:18-cv-01635, 2019 WL 3619403, *11 (N.D. Ohio July 16, 2019) (finding the ALJ did not err in rejecting a doctor's statement that did not exist five days before the hearing when through due diligence the plaintiff could have obtained it sooner).

At the administrative hearing, the ALJ cautioned Plaintiff and his attorney that the ALJ would likely need more information before he would admit Dr. Kouns' assessment. *See* Tr. at 51. The ALJ invited Plaintiff's counsel to describe his efforts to request the assessment "at a reasonably early enough time that [Dr. Kouns] would be able to prepare it and send it back before the five-day rule." *Id.* at 51-52. Despite being provided the opportunity to provide this information after the administrative hearing, Plaintiff's counsel submitted no such description, as the ALJ discussed in his decision. *See id.* at 12.

Accordingly, the Court finds that the ALJ acted well within his discretion when he refused to consider the late-submitted evidence.

**D.       Substantial Evidence Supports the ALJ's Decision**

*1. Dr. Nevares*

Plaintiff contends that, even without Dr. Kouns' psychological medical source statement, the evidence shows that he was disabled by his combination of physical and mental impairments. *See* Dkt. No. 11 at 36. Specifically, Plaintiff contends that the ALJ "erred by not giving sufficient weight to the opinion of treating board certified rheumatologist Dr. Nevares that he was unable to

stand, walk, and sit for eight hours a day. He erred by minimizing her opinion because he decided that it was based primarily on his own reports." *Id.* Plaintiff argues that "the ALJ did not explain how the conclusions of Dr. Nevares, based upon the objective tests, clinical evaluations, and [Plaintiff's] self-reports were not supported by the evidence." *Id.* at 37. In response, the Commissioner argues that Dr. Nevares was not a "treating" source and that the ALJ afforded her opinion appropriate weight. *See* Dkt. No. 15 at 16-17.

The treating physician rule states that "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)). "'[A]n individual's status as a treating physician is contingent upon the existence of an ongoing treatment relationship.'" *Cramer v. Berryhill*, No. 1:15-cv-769, 2017 WL 4784318, *3 (W.D.N.Y. Oct. 24, 2017) (quoting *Partlow v. Astrue*, No. 2:09-cv-471, 2011 WL 320955, *4 n.7(E.D. Va. Jan. 28, 2011) (rejecting argument that an opinion rendered on an initial visit should be treated as the opinion of a treating physician)). "Accordingly, courts have not hesitated to conclude that '[a] single visit to a doctor is insufficient to establish a treating physician relationship and, indeed, depending on the circumstances, sometimes three to five visits will be insufficient.'" *Id.* (quoting *Kane v. Astrue*, No. 1:10-cv-1874, 2011 WL 3353866, *6 (N.D. Ohio Aug. 3, 2011)). An ALJ weighs opinions from non-treating sources based on various factors, such as the length and frequency of the examination, the nature of the source's relationship with the claimant, the supportability of the

opinion, the consistency of the opinion with the record, and the source's specialization. *See* 20 C.F.R. § 416.927(c)(3).

In the present matter, in declining to fully accept Dr. Nevares' opinions, the ALJ appropriately pointed out that Dr. Nevares had only examined Plaintiff one time. *See* Tr. at 20; *see also* 20 C.F.R. § 416.927(c)(2) (allowing the ALJ to weigh a medical source's opinion based on the extent of the source's treatment relationship with the claimant). The ALJ also appropriately contrasted Dr. Nevares' opinions with Plaintiff's reported activities. *See id.* For example, Dr. Nevares opined that Plaintiff could sit for only two hours and stand or walk for only four hours in an eight-hour workday. *See id.* at 19, 797. Plaintiff's activities, however, show that he is not so limited. Plaintiff reported that he does archeology by "look[ing] for artifacts and making cultural arrows/bows," does yoga, and regularly takes walks in the woods. *See id.* at 20, 611, 629, 642. Indeed, Plaintiff reported hiking six miles in a single day. *See id.* at 629. The ALJ also contrasted Dr. Nevares' opinions with her own observations, pointing out that Dr. Nevares only observed "mild" or "slight" "fullness" in Plaintiff's wrists and hands and tenderness in some joints. *See id.* at 20, 666-67. Finally, the ALJ noted that Plaintiff had not started his medication at the time Dr. Nevares prepared her medical source statement. *See id.* at 20.

Here, contrary to Plaintiff's contentions, the ALJ fully explained why Dr. Nevares' opinion was not afforded significant weight and explained why it was not entirely consistent with other evidence in the record.

### 2. Dr. Wassef

Plaintiff also contends that the ALJ failed to "give sufficient weight to his own consultant, Dr. Wassef who determined that [Plaintiff] had moderate limitations in standing, walking,

*and* sitting because of his psoriatic arthritis, arthritis, fibromyalgia, discogenic cervical and lumbar pain." Dkt. No. 11 at 37.

Contrary to Plaintiff's assertion, the ALJ appropriately accounted for Dr. Wassef's opinions. Dr. Wassef opined that Plaintiff had "moderate limitations" in standing, walking, and sitting. *See* Tr. at 464. The ALJ gave this opinion significant weight and, therefore, limited Plaintiff to light work with additional limitations. *See id.* at 16, 20.

Light work, by its very definition, involves limitations on standing and walking. *See* Social Security Ruling ("SSR") 83-10, 1983 WL 31251, *6; *see also Stacey v. Comm'r of Soc. Sec.*, No. 09-cv-638, 2011 WL 2357665, *6 (N.D.N.Y. May 20, 2011). Light work also accounts for meals and other breaks, thereby including limitations on sitting. *See* SSR 83-12, 1983 WL 31253, at *4 ("Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work"); *Josielewski v. Berryhill*, No. 1:15-cv-728, 2018 WL 903471, *4 (W.D.N.Y. Feb. 15, 2018) (holding that "normal work breaks and meal periods split an eight hour workday into approximately two hour periods") (citations omitted). Therefore, by limiting Plaintiff to light work, the ALJ accounted for moderate limitations in Dr. Wassef's opinion.

### 3. Dr. Walker

Plaintiff claims that the ALJ erred in affording the opinion of Dr. Walker "great weight." Dkt. No. 11 at 37. Initially, Plaintiff contends that "[t]here is no indication that C. W[alker] is a physician or of his or her credentials." *Id.* at 37 n.21. Further, relying on *Giddings v. Astrue*, 333 Fed. Appx. 649 (2d Cir. 2009), Plaintiff contends that Dr. Walker's opinion does not constitute

"substantial evidence to refute the findings and opinions of the treating sources (and other examining sources)." *Id.*

First, the Court notes that Dr. Walker identified his academic credentials on a "Disability Determination and Transmittal" form. *See* Tr. at 122. He also entered "38" for his specialty code, *see id.*, signifying that he is a psychologist. *See* Programs Operations Manual System ("POMS") DI 24501.004(B), http://secure.ssa.gov/poms.nsf/lnx/0424501004. As such, the ALJ properly relied on Dr. Walker's opinion.

Second, Plaintiff's reliance on *Giddings* is misplaced. *Giddings* involved comparing the opinions of a nonexamining source with those of a treating source. *See Giddings*, 333 Fed. Appx. at 652. Here, the ALJ never made such a comparison. Indeed, Plaintiff has identified no treating source opinions — aside from the opinion of Dr. Kouns, which the ALJ appropriately declined to admit into the record — contrary to Dr. Walker's opinions. Further, the ALJ relied on the opinions of two additional examining psychologists, Drs. Mount and Liotta, in reaching his decision.

Accordingly, the Court finds that the ALJ appropriately considered and weighed the opinion of Dr. Walker.

### 4. Drs. Mount and Liotta

Finally, the Court finds that the ALJ appropriately accounted for the opinions of Drs. Mount and Liotta. Neither of these psychologists opined that Plaintiff could not work. Rather, they noted that Plaintiff had difficulty in several areas of mental functioning. *See* Tr. at 417, 456. The ALJ discussed these opinions and, based on them, determined that Plaintiff had "moderate" limitations in understanding, remembering, and applying information, interacting with others,

concentrating, persisting, or maintaining pace, and adapting or managing himself. *See id.* at 15,

417, 456. The also appropriately limited Plaintiff to unskilled, simple, routine tasks, only

occasional changes in a routine work setting, and only occasional interaction with others. *See*

*id.* at 16. While Plaintiff argues that the ALJ failed to give their opinions "sufficient weight," *see*

Dkt. No. 11 at 38, he fails to explain how any of the opinions undermine the ALJ's determination.

Finally, as the Commissioner correctly notes, Plaintiff attempts to shift the burden of

proof. Plaintiff contends that no evidence shows that he can perform the lifting, carrying,

standing, and walking requirements of light work. *See* Dkt. No. 11 at 38-39. In doing so,

however, Plaintiff ignores the fact that he has the burden of showing limitations beyond those

described in the RFC. *See, e.g.*, *Suzanne M. v. Comm'r Soc. Sec.*, No. 6:18-cv-485, 2019 WL

4689227, *4 (N.D.N.Y. Sept. 26, 2019) (holding that the plaintiff "has not met her burden of

proving she cannot perform the RFC"). Here, Dr. Wassef's opinions of only "moderate"

limitations, combined with Plaintiff's activities, including making primitive art and selling it

online, "keeping busy" with archeology, being "exhausted" from "help[ing] out his friend with

landscaping, mowing, and moving items," cooking twenty-one (21) times a week, cleaning every

day, shopping and doing laundry twice a week, doing childcare on weekends, playing in a tree

with his son, hiking six miles in a single day, researching nature, "work[ing] in the historical

societies for the environment," discovering a "400[ ] year-old white pine tree grove that he and

[the] forest service will soon publish," "seek[ing] out nature discoveries and spending time in the

woods to decrease his stress," and "occupying himself with research on Green spaces in the local

area," constitute substantial evidence supporting the ALJ's finding that Plaintiff could perform

light work with additional limitations.

Accordingly, the Court finds that the ALJ decision is supported by substantial evidence.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the decision denying benefits is **AFFIRMED**; and the Court further

**ORDERS** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **DENIED**; and the Court further

**ORDERS** that the Commissioner's cross-motion for judgment on the pleadings (Dkt. No. 15) is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's complaint is **DISMISSED**; and the Court further

**ORDERS** that the Clerk of Court shall enter judgment in the Commissioner's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: April 7, 2020
      Albany, New York

Mae A. D'Agostino
U.S. District Judge